**In re David FLAHERTY, Debtor.**

**Bankruptcy No. 89–818–JEY.**

United States Bankruptcy Court,
D. New Hampshire.

June 20, 1994.

John V. Cardone, U.S. Dept. of Justice, Washington, DC.

Geraldine Karonis, U.S. Trustee, Manchester, NH.

Dennis Whelan, Hanover, NH, for debtor.

Jeffrey Schreiber, Chapter 7 Trustee, Danvers, MA.

## *MEMORANDUM OPINION AND ORDER*

JAMES E. YACOS, Bankruptcy Judge.

The Court has before it a "Motion to Determine Tax Liability to the I.R.S." filed by the trustee in the above captioned proceeding, pursuant to 11 U.S.C. § 505(b), requesting the Court to discharge the trustee, the debtor and any successor to the debtor from any further administrative tax liabilities arising from the sale of real property by the trustee and by virtue of the trustee's earning of interest on his deposited funds in this case.

In December of 1993 the trustee filed a tax return with a corresponding check for $24,636.00 with the Internal Revenue Service (hereinafter "I.R.S.") at its I.R.S. service center in Andover, Massachusetts [1]. Included with the return was a letter from the trustee invoking the provisions of § 505(b)(1) by requesting determination within 60 days of any further tax liability pursuant to § 505(b)(1) of the Bankruptcy Code [2]. The letter explicitly stated that the effect of those provisions would be to discharge any further tax liability as long as the returns were not fraudulent or contained any material misrepresentation and unless the trustee was notified within 60 days.

The 60 day period expired on or about February 3, 1994 [3] and the trustee had heard nothing back from the I.R.S. at that time. The I.R.S. did respond by letter dated March 14, 1994 and asserted that an additional amount of $10,144.84 was owed by the estate.

The I.R.S. has a revenue procedure which in fact was in place at the time Congress adopted § 505(b) of the Bankruptcy Code. The procedure provides for the expedited audit and response on returns filed by trustees in bankruptcy, but indicates that such returns are to be filed with the District Director, and attention marked to the Special Procedures Unit of the District Director's Office. The Special Procedures Unit is a specially created division of the I.R.S. which is designed to handle returns of bankruptcy estates on an expedited basis. The annotations to § 505 include a reference to this prompt audit procedure. The annotators state, "[F]or purposes of the above prompt audit procedures, it is intended that the tax

1. The letter and return was addressed as follows:
Internal Revenue Service
Andover, MA 05501

2. Section 505(b)(1) provides as follows:
A trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case by submitting a tax return for such tax and a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax. Unless such return is fraudulent, or contains a material misrepresentation, the trustee, the debtor, and any successor to the debtor are discharged from any liability for such tax—
(1) upon payment of the tax shown on such return, if—
(A) such governmental unit does not notify the trustee, within 60 days after such request, that such return has been selected for examination; ...

3. The letter was dated December 3, 1993. In his motion, the trustee represented that it was sent on or about that date.

authority with which the request for audit to be filed is, as to federal taxes, the office of the District Director in the district where the bankruptcy case is pending." Bankruptcy Code, § 505, Legislative History (Matthew Bender 1994).

In the present case, the trustee contends that by mailing a completed tax return with the corresponding check and letter notifying the I.R.S. of the 60 day response deadline imposed by § 505, he complied with the literal language of the statute in that he did in fact submit a "tax return for such tax" and "a request for such determination". In other words, his action of filing the return with the attached letter notifying the I.R.S. of the invocation of the provisions of § 505(b) with the service center, "triggered" the 60 day deadline and the failure of the I.R.S. to respond within the 60 days, absolved the estate of any further taxes. The trustee contends that addressing the letter to the "Internal Revenue Service, Andover, MA 05501" was legally sufficient to satisfy the statutory requirement of notifying the "governmental unit charged with responsibility for collecting or determination of such tax." That being true, the trustee contends that this is the end of argument since the statute clearly makes that process final and determinative of any administrative tax liability.

*Bankruptcy Code § 505(c)*

The government argues, even assuming that the trustee's construction of the statute "triggering" mechanism is correct, § 505(c) provides an out for the government even if they do not comply with the 60 day response requirement of § 505(b). Section 505(c) reads:

> "Notwithstanding section 362 of this title, after determination by the court of a tax under this section, the governmental unit charged with responsibility for collection of such tax may assess such tax against the estate, the debtor, or a successor to the debtor, as the case may be, subject to any otherwise applicable law."

11 U.S.C. § 505(c).

Under the government's interpretation of the statute, the 60 day limitation of subsection (b) applies only to taxes actually determined by the bankruptcy court. The government argues that they are not seeking a determination of taxes by the bankruptcy court, but rather, they are merely requesting payment of an administrative expense under § 503 which is not subject to the 60 day statute of limitations pursuant to § 505(c).

I do not believe the government's contention under § 505(c) is correct as a matter of statutory interpretation. While subsection (c) does state "under this section" it would be patently absurd and counter to the obvious intent of the legislature to allow subsection (c) to override the immediately preceding requirements of subsection (b). The Court does not necessarily have to read the statute in such an absurd fashion. *United States v. Brown,* 333 U.S. 18, 27, 68 S.Ct. 376, 381, 92 L.Ed. 442 (1948) (no rule of statutory construction necessitates our acceptance of an interpretation resulting in patently absurd consequences) *Demarest v. Manspeaker,* 498 U.S. 184, 191, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991) (adherence to text and structure excused if result "so bizzare" Congress couldn't have intended it); *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982) (when the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, then those intentions must be controlling); *Kelly v. United States of America,* 924 F.2d 355 (1st Cir.1991) (unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result) [4].

4. The government cites *In re Fondiller,* 125 B.R. 805 (N.D.Cal.1991) and *In re Rode,* 119 B.R. 697 (Bankr.E.D.Mo.1990) in support of the contention that § 505(c) does not preclude the I.R.S. from assessing the estate beyond the 60 day statute of limitations. However, both of these decisions were decided under § 505(b), not § 505(c). To the extent the holding in either court implicitly supports the government's contention, I disagree. Although the actual wording of subsection (b) of the statute is "the trustee, the debtor, or any successor to the debtor are discharged from any liability for such tax," in my opinion this language effectively discharges *the estate* of the tax, as well, as pertains to a post-petition administrative tax liability. To the ex-

In the context of the other subsections of § 505, and by its very wording, I believe the language of subsection (c) is intended to pick up an actual determination on the merits by the Bankruptcy Court under subsection (a)(1) of Section 505, which confers jurisdiction on the Bankruptcy Court to determine tax claims timely filed. Subsection (a)(1) confers jurisdiction on the Bankruptcy Court to determine all taxes, including administrative taxes assessed under subsection (b). While subsection (c) does use the broad language "under this section," to follow the government's interpretation would lead an absurd result of subsection (c) nullifying subsection (b). Under the government's interpretation of the statute, the subsection (b) provision intended to give finality to *administrative* tax claim questions within 60 days (if the government takes no action) has no effect.

I do not believe that Congress would have intended to pass subsection 505(b) and then immediately nullify it by subsection 505(c). Moreover, I think it would play havoc with the administration of bankruptcy estates if that construction were permitted. In that instance the administrative tax liability would not be final even after the trustee made distribution of the estate funds to creditors following no challenge by the I.R.S. within the 60 day period[5].

*Bankruptcy Code § 505(b)*

That leaves for decision by this Court the key issue which is the meaning of the words in § 505(b) requiring submission "to the governmental unit charged with responsibility for collection or determination of such tax." I begin my analysis construing the language of the statute by keeping in mind that the statute was designed to cover all kinds of tax returns and not just those tax returns involving the I.R.S. Accordingly, you would not necessarily expect the language to specify that the tax return and request be sent to the District Director and Director's Special Procedures Unit. Rather, the broad language of the statute was simply an attempt by Congress to generally define a procedure for expedited audit without listing all the types of tax collectors and the appropriate governmental unit necessary to collect the tax.

When the Bankruptcy Reform Act of 1978 was passed, Congress was acting in the context of an established custom embodied in an existing revenue procedure issued by the I.R.S. in which trustees were directed to file a request for this specific type of expedited audit and determination with the District Director of the area involved, in addition to filing the tax returns for the estate.[6] This historical context is relevant in interpreting the meaning of the arguably ambiguous language. *Dewsnup v. Timm*, —— U.S. ——, ——, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992).

I also note that the language of § 505(b) itself does not simply speak of the tax return to be filed with the governmental unit, but also speaks of a "request" to be submitted to the governmental unit involved. The "request" reference is not necessarily identical with the "return" reference. I think in context it has to be read to mean a request for the expedited determination procedure under § 505(b), which is a unique feature in the Bankruptcy Code that in effect controls what will happen under the Internal Revenue Code, regardless of the merits of the underlying tax claim.

Section 505(b) was intended to give an absolute deadline to the I.R.S. to react to questions of administrative tax claims after

tent that the *Fondiller* court and the *Rode* court can be read to the contrary, I do not find those decisions persuasive given the realities of the situation. There simply is no remaining entity, other than some metaphysical ghost-like "estate" holding no assets and having no fixed location in space, that could be possibly be involved with the tax liability.

5. Counsel for the government argues that any I.R.S. challenge would lapse when the funds were distributed but there is no basis for this limitation on the government under its construction of subsection (c).

6. *See* Revenue Procedure 76-23, 1976-1 C.B. 562 which was in effect as of the passing of the Bankruptcy Reform Act of 1978. Revenue Procedure 81-17, 1981-1 C.B. 688, the current law, which was adopted in 1981, is essentially identical to Revenue Procedure 76-23.

which the trustee could safely complete distribution of the estate without any further questions being raised. That very fact indicates that a possible construction of the language involved that "the governmental unit charged with responsibility for collection or determination of such tax" in the federal income tax context means, and was meant to mean, the District Director and its Special Procedures Unit created to expedite trustee in bankruptcy tax returns to satisfy the imperatives of both regulatory regimes.

That being the case, I believe that the government has the better of this argument based on § 505(b). The trustee's argument that this language absolves him from complying with the administrative procedure set up to harmonize this conflict area between the bankruptcy world and the tax world is not correct.

I also take into account the fact that it would be contrary to general policy considerations of the efficient administration of bankruptcy cases to allow trustees to file returns generally with I.R.S. service centers when there is a specific procedure outlined by the I.R.S. designed to handle such returns on an expedited basis [7]. There is a policy of finality on these matters. Finality in administration of the bankruptcy estate is the underlying policy driving the statute of limitations requirement of § 505 in the first place. If the I.R.S. is going to be forfeited of its right to challenge a tax return that is arguably legally insufficient, or underpays taxes, and that forfeiture is going to be enforced by the courts, then the triggering mechanism has to be absolutely clear and beyond dispute. In this situation, the I.R.S. has taken the steps to specially create an office to handle these kinds of expedited requests. In my view, the reference in the statute to the act of "submitting a tax return for such tax *and* a request for such a determination" (emphasis supplied) has to be read in that context. The fact that a return by itself normally is filed only with the service center does not mean that a "request" for expedited determination can be so filed and still be legally sufficient.

Therefore, I think it is appropriate on balance that the statute be construed in the manner that will provide the most clear and sure termination of administrative tax liabilities. That is to require trustees to file these requests with the District Director and the Director's Special Procedures Unit. There is no inordinate burden upon a trustee in filing requests this way. It is simply a matter of addressing it one way or the other way. Trustees have no right to hope that the return gets lost in a large administrative shuffle and never gets challenged in the 60–day timeframe [8]. For the foregoing reasons, it is hereby

ORDERED, ADJUDGED and DECREED as follows:

1. The motion to determine tax liability is hereby denied, on the issue of whether the government is bound by the § 505(b) proviso on the facts of this case. The government would have been bound by inaction within the 60–day response time permitted had the request for expedited determination been submitted to the District Director. However, it was not and accordingly the 60–day period did not legally commence running.

2. This ruling applies to this case, and is for prospective application only, in view of the ambiguity of the statutory language construed.

3. The question of this tax liability still must be resolved by the parties, either by agreement or by further hearing on the appropriate pleadings and notice.

DONE and ORDERED.

7. I note that the *Handbook for Chapter 7 Trustees* provides specific instructions for chapter 7 trustees to follow in order to obtain a "quick audit" with the I.R.S. as required under 11 U.S.C. § 505. U.S. Dep't of Justice, Handbook for Chapter 7 Trustees, pp. 37–38 (April 1992).

8. I do not say that is the circumstance in this case, and I do not intend to even imply it. I am commenting on it because it could happen and it would not be equitable to forfeit the government's rights in this context without minimal compliance with the simple procedure of addressing the request to the attention of the District Director.