RHESA HAWKINS BARKSDALE, Circuit Judge:
At issue in this Chapter 7 liquidation is whether the district court erred in holding that the estate of West Texas Marketing Corporation (WTMC), the debtor, (1) could not, for federal income tax purposes, accrue and deduct post-petition interest on undisputed and resolved general unsecured claims; and (2) was liable for a tax penalty, even though the Internal Revenue Service assessed it outside the period allowed by § 505(b) of the Bankruptcy Code. We AFFIRM.
I.
This case was tried on stipulated facts, which are developed more fully in In re West Texas Mktg. Corp., 155 B.R. 399 (Bankr.N.D.Tex.1993), and are restated here only as necessary. In 1982, WTMC filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code; but, the bankruptcy court converted the case to a Chapter 7 liquidation in 1983.
In 1991, Kellogg, as trustee for the estate, filed amended tax returns for 1988 and 1989, on the basis that the estate (1) failed previously to deduct post-petition interest on undisputed and resolved general unsecured claims for 1988 and 1989; and, (2) could deduct net operating loss carryforwards based, in part, on post-petition interest for *1196 such claims for 1982 through 1987.[2] On WTMC’s 1991 return, Kellogg sought also to deduct post-petition interest for such unsecured claims. The total interest expense was approximately $12.6 million, with a total refund claim of approximately $1.1 million. The IRS disallowed the refunds.
In addition, prior to the attempt to deduct post-petition interest, the IRS had assessed a penalty of approximately $23,000 against WTMC for 1989, because it'failed to make estimated tax payments. Eventually, , the IRS set off this penalty against a refund due WTMC for 1988.
As a result of, inter alia, both actions by the IRS, Kellogg filed this adversary proceeding. The bankruptcy court denied relief; the district court affirmed.
II.
A.
It goes without saying that, generally, pursuant to I.R.C. § 163, a corporation may deduct all interest paid or accrued within the taxable year on indebtedness. Kellogg maintains that WTMC’s liability vel non for post-petition interest is a question of state law: that, because the unsecured claims constitute a fixed liability when the petition was filed, the Texas statutory rate of 6% establishes a present and unconditional liability for interest on those claims; and that federal law determines only the priority of how assets of the estate are to be distributed in satisfaction of the claims against it.
In Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946), the Court recognized that “[w]hat claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law.” Id. at 161, 67 S.Ct. at 239 (emphasis added). Thus, the validity of any interest that may have accrued prior to the filing of the petition is resolved generally by state law. But, once the petition is filed, federal law controls. Id. at 163, 67 S.Ct. at 240 (“[w]hen and under what circumstances federal courts will allow interest on claims against debtors’ estates being administered by them has long been decided by federal law”).
Sections 446(a) and 461(a) of the Internal Revenue Code provide that taxable income is computed, and deductions taken, under the accounting method that the taxpayer normally uses for his books. I.R.C. §§ 446(a), 461(a).[3] WTMC maintained its books, and calculated its federal income tax liability, utilizing the accrual method. Under that method, the standard for determining when an expense has been incurred for federal income tax purposes has been the “all events” test. During the years at issue, the test required that two elements be met before accrual of an expense would be allowed: first, all the events must have occurred that establish the fact of the liability; and, second, the amount of the liability must be capable of being determined with reasonable accuracy.[4] Only the first element is at issue.
“[Although expenses may be deductible before they have become due and payable, liability must first be firmly established.... [A] taxpayer may not deduct a liability that is *1197 contingent....” United States v. General Dynamics Corp., 481 U.S. 239, 243, 107 S.Ct. 1732, 1736, 95 L.Ed.2d 226 (1987); accord United States v. Hughes Properties, Inc., 476 U.S. 593, 600-01, 106 S.Ct. 2092, 2096-97, 90 L.Ed.2d 569 (1986). In describing this non-contingent requirement, the Supreme Court has required also that the liability be “fixed and absolute”, Hughes, 476 U.S. at 600, 106 S.Ct. at 2096 (quoting Brown v. Helvering, 291 U.S. 193, 201, 54 S.Ct. 356, 360, 78 L.Ed. 725 (1934)), and “unconditional”, id. (quoting Lucas v. North Tex. Lumber Co., 281 U.S. 11, 13, 50 S.Ct. 184, 184-85, 74 L.Ed. 668 (1930)).
The issue is not the ability vel non of WTMC to pay post-petition interest on the unsecured claims. See Fahs v. Martin, 224 F.2d 387 (5th Cir.1955) (interest for which an accrual basis taxpayer is presently and unconditionally liable, but which is unlikely to be paid by reason of his insolvency, is still deductible).[5] Rather, we must determine whether WTMC’s liability for post-petition interest is fixed, absolute, unconditional, or not subject to any contingency. See 2 Mer-teNS Law of Fed Inoome Tax § 12A.139 (1993) (“[w]hile cases have held interest is deductible when there is improbability of payment it is well to note that in none was there any uncertainty (substantial contingency) of the Lability itself’).
Section 502 of the Bankruptcy Code sets forth a general rule that claims for post-petition interest are not allowed against the estate. 11 U.S.C. § 502(b)(2).[6] One of the principles underlying this provision is that “interest stops accruing at the date of the filing of the petition.” H.R.Rep. No. 595, 95th Cong., 1st Sess. 353 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6309; S.R.Rep. No. 989, 95th Cong., 2d Sess. 63 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5849; see In re Brints Cotton Mktg., Inc., 737 F.2d 1338, 1341 (5th Cir.1984) (“post-petition accumulation of interest (allowable by state law) on claims against a bankrupt’s estate are suspended”).
The Code provides, however, for several exceptions to this general rule. Section 726(a) establishes hierarchial priorities when distributing a debtor’s estate in a Chapter 7 liquidation. Included within the priorities is the payment of post-petition interest on claims against the estate if any assets remain after distributions for prioritized claims, unsecured claims, and penalties, fines, and nonpecuniary damages. 11 U.S.C. § 726(a)(5). The only distribution occupying a lower position on the hierarchy is the return of any remaining assets to the debtor.[7]
In Guardian Investment Corp. v. Phinney, 253 F.2d 326 (5th Cir.1958), a taxpayer *1198 sought to deduct interest on a second mortgage, even though no payments of principal or interest would be due until payment of the first mortgage. Additionally, according to the terms of the second mortgage, payments on it could be made only from the net proceeds of any sale of the mortgaged property. Thus, the potential existed that no payments on the second mortgage would ever be made.
Although Guardian Investment addressed whether the principal due on the second mortgage was contingent, it still provides a framework to consider the contingent nature of an obligation for income tax purposes.[8] In finding the indebtedness to be contingent, the Guardian Investment court examined five aspects of the obligation: (1) is there a fixed or determinable date of maturity; (2) is the obligation owed only upon the happening of a condition; (3) is the happening of that condition uncertain; (4) is that condition to occur in juturo; and, (5) is there a fixed or determinable liability? Id. at 331. Considering the aggregate of these factors, our court held that the liability on the second mortgage was not “a fixed, definite, existing obligation”. Id.
Implicit in the obligation under § 726 to pay post-petition interest on unsecured claims is the necessary condition that sufficient assets remain following distributions under § 726(a)(1)-(4). These distributions could not occur during the taxable years at issue, and there is no fixed or determinable date when these distributions will occur; the condition is in futuro. Because Kellogg seeks to deduct post-petition interest on undisputed claims, the amount of such liability can easily be determined. When taken in the aggregate, and based upon the principles of accrual accounting, we conclude that, under the all events tests, WTMC’s liability for post-petition interest has not been established. Our court recognized in Guardian Investment that, “if the proceeds from the sale of the mortgaged property [were] not sufficient to pay off the first mortgage, the taxpayer [would] not [be] under any obligation to pay any interest or principal of the second mortgage”. Id. at 331. Similarly, if, in the distribution of WTMC’s assets in accordance with § 726(a)(l)-(4), all assets are depleted, then the estate will not have incurred any obligation to pay interest on unsecured claims. This is not due to the fact that payment became impossible, but because the condition necessary to create the liability for the post-petition interest failed to occur.
Accordingly, Kellogg may not now deduct post-petition interest on undisputed and resolved, general unsecured claims against the estate.[9]
B.
The other issue is whether the IRS violated the tax liability discharge provision of 11 U.S.C. § 505(b) when it assessed the estimated tax penalty for 1989 and used it as a setoff against a refund due for 1988.[10] Section 505(b) allows trustees to request a determination of any unpaid tax liability from the *1199 appropriate governmental unit, and provides that, unless that entity notifies the trustee within 60 days that the return has been selected for examination, “the trustee, the debtor, and any successor to the debtor are discharged from any liability for such tax” unless the return is fraudulent or contains a material misrepresentation. 11 U.S.C. § 505(b) (emphasis added).[11] Kellogg made a § 505(b) request, but the IRS did not assess the penalty within the 60 day limit. We must determine, therefore, whether § 505(b) bars the subsequent assessment and collection of the penalty against the estate.[12]
1.
The IRS contends that Kellogg’s reliance on § 505(b) is misplaced because this issue does not involve the IRS seeking to assess or collect taxes; rather, any tax liability for the penalty has been extinguished because it was used as a setoff against the refund due for 1988. Thus, the IRS maintains, this claim is instead for a refund, governed by § 505(a).[13]
As noted, Kellogg filed a timely return for 1989, and requested a prompt determination pursuant to § 505(b). A month later, the IRS notified Kellogg that the return had been accepted as filed and issued a refund check. But, over three months after the 1989 return was filed, the IRS notified Kellogg of the penalty and, subsequently, used it as a setoff against the refund due for 1988. If WTMC had not had that refund due, the IRS would not have been able to collect the *1200 penalty as it did. Only because the IRS found WTMC in the fortuitous position of being entitled to a refund for the prior tax year was it able to offset. Claiming that these events mandate that Kellogg is not entitled to raise a § 505(b) timeliness issue places form over substance.
2.
Under 505(b), the failure of the IRS to act in a timely manner discharges potential tax liability of, inter alia, the debtor and the trustee. At issue is whether this failure discharges the estate as well, under the section’s nomenclature of “any successor to the debtor”. This is an issue of first impression for any circuit court. Of the two lower courts to have considered directly this issue, both have held that the estate does not enjoy the discharge given to “any successor to the debtor”. In re Fondiller, 125 B.R. 805 (N.D.Cal.1991); In re Rode, 119 B.R. 697 (Bankr.E.D.Mo.1990); but see In re Flaherty, 169 B.R. 267, 270 n. 4 (Bankr.D.N.H.1994) (declaring, in dictum, that “[ajlthough the actual wording of subsection (b) of the statute is ‘the trustee, the debtor, or any successor to the debtor are discharged from any liability for such tax,’ ... this language effectively discharges the estate of the tax, as well”).
It goes without saying that our interpretation of a statute begins with its language. The Bankruptcy Code defines a debtor as a “person or municipality concerning which a case under this title has been commenced”, 11 U.S.C. § 101(13); and a “person” includes an “individual, partnership, and corporation”. 11 U.S.C. § 101(41). Thus, a “debtor” must be an individual, partnership or corporation, and it follows that any “successor to the debtor” must also be an individual, partnership or corporation. It becomes more obvious that the estate cannot be a “successor” when we consider what is an “estate”. An “estate” is created at the commencement of the bankruptcy case, and is “comprised” of, inter alia, “all legal and equitable interests of the debtor in property as of the commencement of the case”. 11 U.S.C. § 541(a), (a)(1).
Furthermore, § 505(c) uses the term “estate” as distinct from the terms “debtor” and “successor to the debtor”. Section 505(c) provides that, after the court makes a determination of tax under § 505, “the governmental unit charged with responsibility for collection of such tax may assess such tax against the estate, the debtor, or a successor to the debtor_” Thus, the clear distinction between the “estate” and “successor to the debtor” demonstrates that Congress did not intend for the discharge of tax liability under § 505(b) to apply to the estate.
In addition to the Code’s plain language, the situation faced by trustees prior to the enactment of the Bankruptcy Code illumines the purpose to be served by § 505. Prior to the Code, trustees lacked a mechanism for obtaining a prompt determination of the tax liability of the estate. Therefore, a trustee wishing to have the case closed was confronted with the choice of leaving the estate open until the IRS’s opportunity to review the estate’s tax expired, or proceed to have the ease closed and face the potential of personal liability for additional taxes that the IRS might determine subsequently were due. Section 505(b) provided the solution to this dilemma. 1A Collier on Bankr. (MB) ¶ 12.04[3].
Although [§ 505(b)] was envisioned as a mechanism to permit a determination of tax liability at the conclusion of the administration of an estate, i.e., a single request for a prompt determination of all the relevant tax periods, there is nothing in its language to prevent successive requests as each tax period is completed and a return filed apart from the obligation to pay the taxes shown on such returns.

Id.

III.
For the foregoing reasons, the judgment is
AFFIRMED.

. WTMC’s accounting period runs from October 1 to September 30. For example, taxable year 1988 represents October 1, 1987, to September 30, 1988.

. I.R.C. § 446(a) provides: "Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books”.
I.R.C. § 461(a) provides: "The amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income”.

.The Treasury Regulation in force from 1982 to 1991 provided that "an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy”. Treas.Reg. § 1.461-1(a)(2) (1991). In 1992, the Regulation was modified to provide for the deduction of expenses "in the taxable year in which all the events have occurred that establish the fact of the liability, the amount of the liability can be determined with reasonable accuracy, and economic performance has occurred with respect to the liability”. Treas.Reg. § 1.461-1 (a)(2)(i) (1992).

. For all but one of the years at issue, the total undisputed and resolved claims against WTMC exceeded WTMC's assets. Thus, it was extremely unlikely that WTMC would be able to pay such claims. As noted, however, this fact is not dis-positive of the issue before us.

. Section 502 of the Bankruptcy Code provides, in pertinent part:
(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.
(b) ... if such an objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... and shall allow such claim in such amount, except to the extent that—
(2)such claim is for unmatured interest.
11 U.S.C. § 502.

. Section 726 of the Bankruptcy Code provides that:
(a) ... property of the estate shall be distributed—
(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title [ (prioritized claims) ];
(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection ...;
(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph 2(C) of this subsection;
(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;
(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection; and
(6) sixth, to the debtor.

. We rely upon Guardian Investment to provide structure for our analysis of the contingent nature of WTMC's liability for post-petition interest, not to command of itself the result we reach on the basis of §§ 502(b) and 726(a). We need not, therefore, concern ourselves with factual distinctions between Guardian Investment and the present case.

. Of course, if assets remain after distributions are made pursuant to § 726(a)(1)-(4), then liability for post-petition interest will be established.

. As a preliminary matter, the IRS contends, erroneously, that, because the United States did not waive sovereign immunity, the district court lacked jurisdiction to consider whether WTMC was entitled to a refund for the penalty. It maintains that, as a statutory condition precedent to a refund suit, the taxpayer must file a claim for the refund.
Section 7422 of the Internal Revenue Code provides that ‘‘[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax ... until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof". I.R.C. § 7422(a). Furthermore, Bankruptcy Code § 505(a)(2)(B) provides that a bankruptcy court may not determine
any right of the estate to a tax refund, before the earlier of—
(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or
(ii) a determination by such governmental unit of such request.
11 U.S.C. § 505(a)(2)(B).
Between submission of briefs and oral argument, however, Congress enacted the Bankruptcy Reform Act of 1994 by which it, inter alia, *1199 abrogated expressly, and retrospectively, a claim of sovereign immunity with respect to § 505. Pub.L. No. 103-394, § 113, 108 Stat. 4106, 4117. Section 113 of the Act provides in pertinent part:
Section 106 of title 11, United States Code, is amended to read as follows:
"§ 106. Waiver of sovereign immunity
"(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
"(1) Section!] ... 505 ... of this title.
"(2) The Court may hear and determine any issue arising with respect to the application of such sections to governmental units.
108 Stat. 4106, 4117-18. And, pursuant to § 702(b)(2)(B) of the Act, this amendment is made applicable to all pending cases:
The amendments made by sections 113 and 117 shall apply with respect to cases commenced under title 11 of the United States Code before, on, and after the date of the enactment of this Act.
108 Stat. 4106, 4150.
Although, in his rebuttal at oral argument, counsel for Kellogg noted the recent Act, neither side filed a letter citing supplemental authority as permitted by Fed.R.App.P. 28(j). We note that the Government is obviously cognizant of Rule 28(j), in that it filed a 28© letter on a different issue in this case. Needless to say, supplemental briefs should have been filed.

.Section 505(b) of the Bankruptcy Code provides:
A trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case by submitting a tax return for such tax and a request for such a determination to the govem-mental unit charged with responsibility for collection or determination of such tax. Unless such return is fraudulent, or contains a material misrepresentation, the trustee, the debtor, and any successor to the debtor are discharged from any liability for such tax—
(1) upon payment of the tax shown on such return, if—
(A) such governmental unit does not notify the trustee, within 60 days after such request, that such return has been selected for examination; or
(B) such governmental unit does not complete such an examination and notify the trustee of any tax due, within 180 days after such request or within such additional time as the court, for cause, permits;
(2) upon payment of the tax determined by the' court, after notice and a hearing, after completion by such governmental unit of such examination; or
(3) upon payment of the tax determined by such governmental unit to be due.
11 U.S.C. § 505(b).

. Kellogg challenges the underlying merits of the penalty. The only time Kellogg previously raised this issue was in a reply brief to the bankruptcy court. (It was not in the pretrial order.) It appears that the issue was not raised in, or considered by, the district court. In any event, we consider it waived.

. Section 505(a)(1) of the Bankruptcy Code provides that
the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.
11 U.S.C. § 505(a)(1).