**In re Paul W. GOODRICH, Debtor.**

**Bankruptcy No. 91–12190–WCH.**

United States Bankruptcy Court,
D. Massachusetts.

Dec. 17, 1997.

David J. Reier, Goldstein & Manello, Boston, MA, for Debtor.

Mae J. Lew, Boston, MA, for U.S.

Marvis Knospe, Sp. Asst. U.S. Atty., Boston, MA, Carina J. Campobasso, Trial Atty., U.S. Dept. of Justice, Washington, DC, for U.S.

Joseph I. Schindler, Chapter 7 Trustee, Pro se.

## DECISION REGARDING TRUSTEE'S AMENDED PROPOSED DISPOSITION

WILLIAM C. HILLMAN, Bankruptcy Judge.

### I. Introduction

Joseph I. Schindler, the Chapter 7 trustee of this estate (the "Trustee") has filed his Amended Proposed Disposition (the "Distribution"), which the United States Trustee approved. The United States ("IRS"), however, objects to approval of the Distribution. The facts are not in dispute.

In the Distribution, the Trustee proposes to pay out the funds remaining in the estate as follows:

| Payee | Stated Status | Amount | % |
|---|---|---|---|
| Schindler [1] | Trustee | $11,902.88 | 100% |
| Schindler | Trustee Counsel | $19,660.53 | 100% |
| Levine | Trustee Accountant | $22,699.28 | 100% |
| Bankruptcy Court | Court fees | $ 100.50 | 100% |
| Choate Hall & Stewart | Trustee Special Counsel | $ 6,686.23 | 100% |
| IRS | Priority claim | $41,394.21 | 50.8209% |
| Mass. DOR [2] | Priority claim | $26,967.45 | 50.8209% |

1. The Trustee's firm is named as the recipient of both the Trustee's commission and the fees of the Trustee's counsel. His name is used as a convenience.

2. The Massachusetts Department of Revenue ("DOR") did not appear at the hearing. Its claim will be reviewed at a hearing to be held.

The IRS claim is comprised of the post-petition late filing penalties and interest. IRS objects to the Distribution on the basis that it is an administrative claimant entitled to equal payment along with the professionals.

The Trustee takes the position that the estate has no liability to IRS as he received a "505(b) letter" (discussed below) notifying him that his returns had been "accepted as filed". He then adopts a rather remarkable stance:

On or about May 19, 1997, the IRS assessed against the Debtor's estate additional tax-related charges totaling $84,440.13.

Even though the Trustee believed that the Debtor's estate bore no liability for these additional charges, he nonetheless proposed to pay slightly more than fifty (50%) percent of such charges.

*Trustee's Opposition to IRS Motion for Rehearing ¶¶ 5, 6.*

After granting and holding a rehearing,[3] I took the matter under advisement. Both IRS and the Trustee filed post-hearing memoranda of law.

**3.** Counsel for IRS did not appear at the originally scheduled hearing and the Distribution was approved as filed. IRS then moved for a rehearing and the Trustee objected. Even when the Trustee learned that the failure of IRS counsel to appear had resulted from public transportation difficulties, he persisted in his objection. I granted the IRS motion and held a hearing on the merits.

**4.** The Trustee and the IRS agree that the returns were not filed until March, 1997. The Trustee's fee application reflects "Preparation of the letters to the IRS and DOR enclosing the checks in payment of the principal amounts of their respective claims" on August 3, 1995, and a telephone conference with other counsel about those letters and checks five days later. I cannot understand the delay.

**5.** "(b) A trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case by submitting a tax return for such tax and a re-

## II. Analysis

### A. The § 505(b) Letter

The Judicial Code imposes certain duties upon trustees. Among those are the requirements that

Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation.

28 U.S.C. § 960.

It is now settled that § 960 applies to a liquidating trustee. *California State Board of Equalization v. Sierra Summit, Inc.*, 490 U.S. 844, 853, 109 S.Ct. 2228, 2234–35, 104 L.Ed.2d 910 (1989).

The Trustee filed the post-petition tax returns well after the dates on which they were due.[4] With those returns he paid the amount of tax which the returns indicated was payable and also requested a determination of the unpaid tax liability of the estate pursuant to 11 U.S.C. § 505(b).[5] IRS did not, within the statutory period, notify the Trustee that it had selected any of the returns for examination nor did it conduct an examination. Instead, by letter dated April 25, 1997 IRS notified the Trustee that it had accepted his returns "as filed".[6] There is no contention that the returns were fraudulent or contained

quest for such a determination to the governmental unit charged with responsibility for collection or determination of such tax. Unless such return is fraudulent, or contains a material misrepresentation, the trustee, the debtor, and any successor to the debtor are discharged from any liability for such tax—

(1) upon payment of the tax shown on such return, if—

(A) such governmental unit does not notify the trustee, within 60 days after such request, that such return has been selected for examination; or

(B) such governmental unit does not complete such an examination and notify the trustee of any tax due, within 180 days after such request or within such additional time as the court, for cause, permits ..."

11 U.S.C. § 505(b).

**6.** On May 24, 1993, IRS had filed a request for the payment of an administrative claim in which it sought taxes, interest, and penalties for the 1991 calendar year.

material misrepresentations. The claim for interest and penalties was filed May 19, 1997.

### B. Who is no longer liable?

As authorized by the Code, the Trustee requested a determination of "any unpaid liability *of the estate* for *any tax* incurred during the administration of the case". 11 U.S.C. § 505(b) (emphasis added). Notwithstanding that it is the estate's liability that is subject to determination, the express statutory discharges only "the trustee, the debtor, and any successor of the debtor" from liability upon fulfillment of the requirements. *Id.*

IRS urges that discharge of the trustee under the statute does not discharge the estate, citing *Kellogg v. United States (In Re West Texas Marketing Corp.),* 54 F.3d 1194 (5th Cir.1995), *cert. denied* —— U.S. ——, 116 S.Ct. 523, 133 L.Ed.2d 430 (1995); *In re Fondiller,* 125 B.R. 805 (N.D.Cal.1991); *In re Vale,* 204 B.R. 716 (Bankr.N.D.Ind.1996); and *In re Rode,* 119 B.R. 697 (Bankr.E.D.Mo. 1990).

*West Texas Marketing* treated the issue very narrowly. The court assumed without discussion that it was entirely appropriate for IRS to assess penalties after it had accepted a trustee's tax returns as filed and had even issued a refund check. It then focused exclusively on the phrase "successor to the debtor" and held that the estate is not a successor. From this it concluded that "Congress did not intend for the discharge of tax liability under § 505(b) to apply to the estate." 54 F.3d at 1199.[7]

The Trustee, on the other hand, finds comfort in Judge Yacos' language in *In re Flaherty,* 169 B.R. 267 (Bankr.D.N.H.1994):

Although the actual wording of subsection (b) of the statute is "the trustee, the debtor, or any successor to the debtor are discharged from any liability for such tax," in my opinion this language effectively discharges the estate of the tax, as well, as

pertains to a post-petition administrative tax liability. To the extent that the *Fondiller* court and the *Rode* court can be read to the contrary, I do not find those decisions persuasive given the realities of the situation. There simply is no remaining entity, other than some metaphysical ghost-like "estate" holding no assets and having no fixed location in space, that could possibly be involved with the tax liability.

169 B.R. at 270 n. 4.[8]

The Trustee urges me to follow the *McNulta* principle, now more than an century old, as I have in another context: [9]

Actions against the receiver are in law actions against the receivership or the funds in the hands of the receiver, and his contracts, misfeasances, negligences, and liabilities are official, and not personal, and judgments against him as receiver are payable only from the funds in his hands.

*McNulta v. Lochridge,* 141 U.S. 327, 332, 12 S.Ct. 11, 13, 35 L.Ed. 796 (1891).

Courts in this circuit have applied *McNulta* to bankruptcy trustees. *See Valdes v. Feliciano,* 267 F.2d 91, 94 (1st Cir.1959); *McRanie v. Palmer,* 2 F.R.D. 479, 481 (D.Mass.1942).

If, then, the trustee and the estate are one when the action is against the trustee, is it possible to argue that there is a distinction between the estate and the trustee when the estate is the target of the litigation? Cannot the Trustee paraphrase Louis XIV and say "the estate, it is I"?

Both positions are worthy of serious consideration.

### 1. The legislative history

The predecessor of § 505(b), Section 2a (2A) of the Bankruptcy Act of 1898, added in 1966, dealt only with the matters now found

---

**7.** This is the same approach taken by the courts in *Fondiller,* 125 B.R. at 808, *Vale,* 204 B.R. at 725, and *Rode,* 119 B.R. at 699–700.

**8.** Both the Fifth Circuit and IRS in its memorandum regard the language quoted from *Flaherty* as dicta.

**9.** *Branch v. SEI Corp. (In re Bank of New England Corp.),* 210 B.R. 404, 409 (Bankr.D.Mass. 1997).

in § 505(a).[10]  Resolving the tax liabilities of trustees and estates was only addressed in later legislation.

The 1970 Bankruptcy Commission recommended that trustees in liquidations not be liable to file income tax returns and pay taxes unless the estate had an excess of assets over liabilities when liquidated.[11]

The 1978 House bill however, required the payment of taxes by the trustee and provided a mechanism for determining the liability of the trustee and the estate for post-petition taxes.  The ultimate decision was with the bankruptcy court and:

> The final order of the court determining the liability of the estate with respect to such tax under this section binds the governmental unit imposing such tax, and payment of such tax discharges the trustee, the debtor, and any successor to the debtor from any liability for such tax.[12]

S.B. 2266, the bill ultimately considered by the Senate, after amendment by its Judiciary and Finance Committees,[13] took a different approach to the technique for obtaining a determination and concluded that, upon satisfaction of the statutory formalities,

> the trustee and any predecessor of the trustee shall be discharged from personal liability for the taxes for which an application was made under this section, except that any such discharge shall be void in case of fraud or material misrepresentation by the trustee.  In a case under chapter 7 or 11 of this title involving a debtor other than a corporation, in which property of the estate remains, or in the judgment of

the trustee, is reasonably likely to remain for return to the debtor, the trustee shall make the application described in this subsection and a discharge of the trustee shall also discharge a predecessor of the trustee and the debtor from liability including as a transferee, for the tax for which the application was made.[14]

The conflicting provisions were considered by members of both houses and a compromise bill was agreed upon and passed, containing the present language of § 505.  The explanation on the floor of both houses was brief:

> Section 505 of the House amendment adopts a compromise position with respect to the determination of tax liability from the position taken in H.R. 8200 as passed by the House and in the Senate amendment.[15]

The beneficiaries of tax finality thus began with the trustee, the debtor, and any successor of the debtor in H.R. 8200; moved on to the trustee and any predecessor of the trustee and (in solvent cases) the debtor including as a transferee in S.B. 2266; and returned to the House formulation in § 505(b) as enacted.  No where is there a reference to the effect of the discharge on the estate itself.  At no point in the legislative history is there mention of *McNulta*.  The legislative history is not helpful.

### 2.  The legal principle to be applied

■  Section 505(b) is not one of those sections of the Bankruptcy Code which is interrelated to many others which must be consulted in its interpretation.[16]  It address-

---

10.  The section granted the bankruptcy court jurisdiction to "hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax" under certain conditions.  Bankruptcy Act of 1898 § 2a(2A), added by P.L. 89–496, 80 Stat. 270 (1966).

11.  *Report of the Commission on the Bankruptcy Laws of the United States,* H.R.Doc. No. 93–137, 93rd Cong., 1st Sess. (1973) reprinted in Appendix 4, *Collier on Bankruptcy* (15th ed. rev.), especially at App.Pt. 4–555.

12.  H.R. 8200, 95th Cong., 1st Sess. § 505(c) (1977).  A separate provision of the 1978 Act, applicable only to plan proponents in Chapter 11, allowed the court to authorize the proponent to request a determination of the amount of the

tax effects of a plan.  If the governmental unit did not respond in 270 days, the court could make the determination.  *Id.,* § 1146(d).

13.  *See* S.Rep. 95–989, 95th Cong., 2nd Sess. 67–68 (1978) (Judiciary);  S.Rep. 95–1106, 95th Cong., 2nd Sess. 9–10 (1978) (Finance).

14.  S.B. 2266, 95th Cong., 2nd Sess. § 505(d), (e) (1987).

15.  Cong.Rec. H11095 (Sept. 28, 1978);  S17911 (Oct. 6, 1978).

16.  "Statutory construction ... is a holistic endeavor.  A provision that may seen ambiguous in isolation is often clarified by the remainder of the

es a specific problem. In the absence of useful legislative history, and absent a conflict with any other section of the Code, the controlling principle must be the "plain language" rule of *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).[17] For this narrow purpose only, I conclude that the discharge granted by § 505(b) does not extend to the estate, as distinguished from the trustee.[18]

I am sensitive to the Trustee's argument that this stance

> would give rise to exceedingly difficult real-world complications. If, for example, the tax liability of a debtor's estate survived ... what result would obtain if the IRS were to assess liability after distribution of an estate's assets but before the case has closed?

*Memorandum in Support of the Trustee's Opposition to the Internal Revenue Service's Objection to the Proposed Distribution of Assets of the Estate* at 5.

I need not deal with that hypothetical in the present case, and concede that it will, when it arises, present perplexing issues which may require legislative solutions. But I shall not let those "future prospects, with their joys and sorrows, cloud what is actually at hand".[19] The issue before me has been resolved.

I hold that the liability of the estate to IRS has not been extinguished and is properly the subject of a proof of claim. This holding

obviates any need to address the competing arguments of the parties regarding the effect of the § 505(b) discharge on penalties and interest.

### C. The priority of the interest and penalties

▮ The trustee does not dispute the amounts claimed by IRS. He does, however, accord roughly 50% of those sums status as a priority claim against the estate, entitled to an eighth priority under 11 U.S.C. § 507(a)(8), rather than treating the full amount as an expense of administration, with a first priority. 11 U.S.C. § 507(a)(1). This is inappropriate.

The Supreme Court has recognized "Congress's policy judgment that a postpetition tax penalty should receive the priority of an administrative expense." *United States v. Noland,* 517 U.S. 535, ———–———, 116 S.Ct. 1524, 1527–28, 134 L.Ed.2d 748 (1996). The same rule applies to postpetition interest on tax claims. *Small Business Administration v. Preferred Door Co. (In re Preferred Door Co.),* 990 F.2d 547 (10th Cir.1993); *In re Gould & Eberhardt Gear Machinery Corp.,* 80 B.R. 614 (D.Mass.1987). The Distribution must be disapproved since the claim of the IRS must be treated according to its priority as an administrative claim.[20]

An appropriate order will enter.[21]

---

statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear ... or because one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Savings Association v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) (citations omitted). *See also Summit Investment & Development Corp. v. Leroux,* 69 F.3d 608, 610 (1st Cir.1995).

**17.** *See generally* Walter A. Effross, *Grammarians at the Gate: The Rehnquist Court's Evolving "Plain Meaning" approach to Bankruptcy Jurisprudence,* 23 Seton Hall L.Rev. 1636 (1993).

**18.** If I were to look beyond the section itself, there are two minor indications elsewhere in the Bankruptcy Code that Congress regarded the trustee and the estate to be distinct. In § 365(k) we find that assignment of an assumed lease

"relieves the trustee and the estate from any liability." Section 329(b)(1) formerly provided that excess attorney compensation recovered be paid to the trustee. The statute was amended by P.L. 98–353 § 432(b) to direct the payment to the estate. I do not agree with IRS that the inclusion of the estate rather than the trustee in § 505(c) assists in the analysis.

**19.** Virginia Woolf, *From the Lighthouse,* ch. I.

**20.** To the extent that this conclusion is contrary to *In re Hospitality Associates,* 212 B.R. 188 (Bankr.D.N.H.1997) I respectfully disagree with that decision.

**21.** This decision does not deal with entitlement to fees in the amounts requested in the Distribution. Those matters will be reviewed when a new proposed disposition is filed.